UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOANN D. WERKEMA,

        Plaintiff,

v.                                             Case No. 1:13-cv-646
                                             Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
                                         /

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on October 2, 1956 (AR 144).[1] She alleged a disability onset date of October 5, 2009 (AR 144). Plaintiff had four or more years of college, with previous employment as a computer operator at a hospital and a school teacher (AR 157). Plaintiff identified her disabling conditions as bipolar II, anxiety and a cognitive disorder (AR 156). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on March 2, 2012 (AR 21-30). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 5, 2009, and that she met the insured status requirements of the Social Security Act

through December 31, 2014 (AR 23).  At the second step, the ALJ found that plaintiff had the following severe impairments: a left shoulder disorder; depression; and a cognitive disorder (AR 23). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 24).  Specifically, plaintiff did not meet the requirements of Listings 1.02 (major dysfunction of a joint), 12.02 (organic mental disorders), or 12.04 (affective disorders) (AR 24).

>The ALJ decided at the fourth step that plaintiff:

> . . . has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is restricted to only occasional overhead reaching with the left upper extremity.  In addition, she is limited to simple unskilled work with an SVP rating of 1 or 2; and can understand, remember, and carry out only short simple instructions. She is also limited to routine work that does not involve frequent significant changes or adaptations, and work that does not involve meeting production quotas or goals or keeping pace with co-workers.

(AR 25).  The ALJ also found that plaintiff was unable to perform any past relevant work (AR 28).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled work at all exertional levels (AR 28). Specifically, plaintiff could perform the following work in the lower peninsula of Michigan: bench handler (medium exertional level) (10,000 jobs); assembly work (medium exertional level) (10,000 jobs); ticket seller (light exertional level) (3,000 jobs); machine operator (light exertional level) (2,500 jobs); order clerk (light exertional level) (5,000 jobs); bench handler (light exertional level) (5,000 jobs); and assembly worker (light exertional level (5,000 jobs) (AR 29).  Accordingly, the ALJ determined that plaintiff has not been under  a disability, as defined in the Social Security Act, from October 5, 2009 (the alleged onset date) through March 2, 2012 (the date of the decision) (AR 30).

### III. ANALYSIS

Plaintiff raised three issues on appeal:

### A. The ALJ's step 3 determination and conclusions are not supported by substantial evidence.

Plaintiff contends that the ALJ did not properly consider her bipolar disorder as meeting or equaling Listing 12.04.[2] A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the

---

[2] Plaintiff concedes that the ALJ's failure to identify bipolar disorder as a severe impairment is harmless error. Plaintiff's Brief at pp. 11-12. *See Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008) (the fact that some of a claimant's impairments were not deemed to be severe at step two is "legally irrelevant").

claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

Here, the ALJ found that plaintiff failed to meet either the "paragraph B" or "paragraph C" criteria of Listing 12.04 (AR 24). In reaching this determination, the ALJ pointed out that his reasons for the findings "will be further explained in evaluating the claimant's residual functional capacity" (AR 24). In this regard, the ALJ did provide such an explanation which was sufficient to support his findings at step three (AR 25-28). The ALJ's method of addressing the Listings was not error requiring reversal. As the Court observed in *Bledsoe v. Barnhart*, 165 Fed. Appx. 408 (6th Cir. 2006):

> Bledsoe's argument that the ALJ should spell out the weight he gave to each factor in his step three analysis is not supported by case law. Requiring a heightened articulation standard would be inconsistent with this court's rulings. In a case that turned on step three analysis, where the disability claimant had multiple medical problems, this court noted, "the ALJ's findings of fact should not be disturbed unless we are persuaded that his findings are legally insufficient." *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir.1986). *Dorton* supports the proposition that there is no heightened articulation standard where the ALJ's findings are supported by substantial evidence. *Id.* In the instant case the ALJ's factual findings are supported by substantial evidence. The plain language of the ALJ's opinion states that he considered all impairments. The ALJ thus considered all evidence as required by the regulation.

*Bledsoe*, 165 Fed. Appx. at 411.

Furthermore, it is plaintiff's burden to establish that she met a particular Listing. *See Evans*, 820 F.2d at 164. Here, plaintiff does not demonstrate that she met the criteria of Listing 12.04. Rather, plaintiff simply speculates that it is "possible that the medical evidence" meets or equals a listed impairment. Plaintiff's Brief at p. 14. Accordingly, plaintiff's claim of error will be denied.

>    **B.     The ALJ failed to properly account for plaintiff's "moderate" concentration, persistence, and pace limitations in his RFC assessment and corresponding hypothetical questions to the VE.**

Plaintiff contends that the ALJ erred because although he determined at step three that plaintiff had "moderate" limitations in maintaining concentration, persistence or pace, the ALJ did not include these limitations in plaintiff's residual functional capacity (RFC). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

As an initial matter, the finding referred to by plaintiff was made at step three of the sequential evaluation process when the ALJ was required to determine whether plaintiff met the "paragraph B" requirements of Listing 12.02 and 12.04 (AR 24). This finding was not an RFC finding made at step four. *See* 20 CFR Pt. 404, Subpt. P, App. 1, 12.00.A. ("RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments. An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder").

The court discussed a similar issue in *Pinkard v. Commissioner of Social Security Administration*, No. 1:13-cv-1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014), explaining the

difference between the findings made at step three to determine whether a claimant met the requirements of a particular listed impairment and the RFC determination made at step four:

> Next, Plaintiff argues that the ALJ erred in concluding that Plaintiff had moderate difficulties in concentration, persistence, and pace, while failing to include an appropriate limitation for these difficulties in the RFC findings. . . Plaintiff refers to the ALJ's paragraph B findings in his evaluation of Plaintiff's depression under 12.04 of the listing of impairments []. 20 C.F.R. pt. 404, subpt. P, app. 1 Sections 12.04, 12.05, 12.06. However, the ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00. Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10.

In addition, the ALJ's RFC took into account plaintiff's nonexertional limitations by limiting her to simple unskilled work, which required her to understand, remember, and carry out only short simple instructions, and limited her to routine work that did not involve frequent significant changes or adaptations, meeting production quotas or goals, or keeping pace with co-workers (AR 25). Unskilled work, by definition, incorporates some non-exertional components, consisting of "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Such work involves simple and routine tasks. *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000). *See generally, Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (where ALJ found that claimant "often" suffered problems with concentration, limiting claimant to jobs that are routine and low stress and which do not involve intense interpersonal confrontations appropriately addressed that impairment). The vocational expert (VE) identified unskilled jobs consistent with this RFC (AR 69-

8

71). According, plaintiff's claim of error regarding the ALJ's procedure for determining the RFC will be denied.

    **C.**  **The ALJ failed to follow the treating physician rule in evaluating the medical source statement of Dr. Thebert.**

Plaintiff contends that the ALJ's decision to assign limited weight to her treating psychiatrist, Michael Thebert, M.D., is not supported by evidence and failed to give good reasons for this determination. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the

opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff's treating psychiatrist, Dr. Thebert, prepared a mental residual functional capacity (RFC) assessment on January 5, 2012 (AR 447-49). In that assessment, the doctor found that plaintiff's ability to function was extremely restricted (i.e., "extremely limited") in the following areas: understand and remember detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine with minimal supervision; and be aware of normal hazards and take appropriate precautions (AR 447-48). In addition, plaintiff's ability to function was seriously restricted (i.e., "markedly limited") in the following areas: remember locations and work-like procedures; understand and remember moderately detailed instructions; carry out moderately detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods of time; make ordinary work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting (AR 447-48).

Dr. Thebert summarized his evaluation as follows:

> Joann had problems on her job as a teacher. Left a child in a classroom alone, left a child outside for recess. School noted these changes in long-term teacher and she was removed from her job.
>
> Workup revealed an unexpectedly low IQ and other issues leading to a diagnosis of cognitive disorder NOS. Doesn't quite fit diagnosis of dementia at this time.
>
> She also has bipolar disorder that is in good control with treatment.
>
> Disability due to cognitive impairment.

(AR 449).

> The ALJ evaluated Dr. Thebert's opinions as follows:
>
> On January 5, 2012, Dr. Thebert completed a mental residual functional capacity assessment report in which he concluded that the claimant had marked and extreme limitations in the areas of understanding and memory and adaptation due to a cognitive disorder. Dr. Thebert indicated the claimant was disabled due to her cognitive impairment. He also noted the claimant had a bipolar disorder with good control with treatment (Exhibit 12F).
>
> . . . I also assign limited weight to the January 5, 2012 mental residual functional capacity assessment of Dr. Thebert, the claimant's current psychotherapist. His findings that the claimant has "marked" limitations in eight categories, and "extreme" limitations in four other categories appear to overstate significantly the extent of the claimant's mental limitations, and are not consistent with, or supported by, either Dr. Thebert's progress notes or other treatment records. Dr. Thebert's assessment appears to have been performed specifically for use at the claimant's disability hearing. There were several progress reports of Dr. Thebert indicating the claimant's general stable condition. In a March 12, 2009 progress note, it was reported the claimant's condition had improved with treatment. She seemed more hopeful and had some lifting of her mood. She was friendly with no signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Her associations were intact, her thinking was logical, and her thought content was appropriate with no signs of anxiety. A February 25, 2010 progress note reported improving and stable condition. On November 18, 2010, it was reported that the claimant's condition had not changed, and the plan was to continue with the same treatment regime. Similarly, a January 13, 2011 progress note report indicated that the claimant's mood was stable, she was sleeping well, and there was no psychosis. She was tolerating her current treatment. The claimant's July 13, 2011 routine general medical examination report by Binisa B. Shah, M.D. indicated that the claimant had no problems with the review of her system. Her physical

11

> examination was normal with appropriate mood and affect and no thought disorder. Her depressive disorder was found to be in partial to unspecified remission (Exhibits 1F, 6F, 9F, 11F, and 12F).

(AR 26-27).

Plaintiff contends that the ALJ failed to properly evaluate Dr. Thebert's opinion because he did not consider plaintiff's nearly monthly visits with the doctor since 2006 (AR 224-82, 334-58, 395-422). While Dr. Thebert found plaintiff's bipolar disorder under control, he expressed concerns regarding her cognitive deficits and possible early dementia. The medical record reflects that Dr. Thebert observed plaintiff's cognitive mental condition deteriorating over time. On May 6, 2010, the doctor noted that plaintiff had "[j]ust signed papers to accept termination [of her teaching position] and going on long term disability due to this illness not being able to be stable enough to allow working" (AR 235). On August 12, 2010, plaintiff stated that her memory was worse and that according to her daughter, she was "doing 'weird things'" (AR 231). On August 26, 2010, Dr. Thebert found no change in plaintiff's cognitive status, but noted "[s]till possible mild cognitive deficits" (AR 230). On November 18, 2010, Dr. Thebert noted that there had been no change in plaintiff's cognitive status, but planned to have additional neuropsych testing (AR 226). On January 13, 2011, Dr. Thebert noted that with respect to plaintiff's cognitive condition, plaintiff "had new neuropsych testing that shows a worsening and possible early dementia" (AR 224, 408).

Based on this record, the ALJ did not give good reasons for the weight assigned to Dr. Thebert's January 5, 2012 RFC assessment. *See Wilson*, 378 F.3d at 545. However, "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Id.* at 546-47. As the party attacking the agency's determination, plaintiff has

12

the burden of establishing that the error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009). Here, plaintiff has met that burden. Dr. Thebert's treatment relationship with plaintiff lasted approximately five years. Recent records suggest that plaintiff's condition declined in 2010. While the ALJ's decision referred to the positive aspects of plaintiff's January 13, 2011 examination, he did not address Dr. Thebert's negative findings with respect to plaintiff's cognitive disorder, i.e., that plaintiff had a worsening condition and possible early dementia. In addition, it appears that Dr. Thebert opined that plaintiff lost her teaching position due to cognitive problems.

### IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Thebert's treatment records and the doctor's January 5, 2012 RFC assessment. A judgment consistent with this opinion will be issued forthwith.


Dated:  September 22, 2014         /s/ Hugh W. Brenneman, Jr.
                                   HUGH W. BRENNEMAN, JR.
                                   United States Magistrate Judge